IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TYREE BELL, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 4:17-cv-695-DGK |
| OFFICER PETER NEUKIRCH, et al., | ) |
|       Defendants. | ) |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff, by his counsel, submits the following to assist the Court and expedite rulings during the trial of the above-captioned.

**1. Plaintiff's arrest without probable cause and subsequent detention violate the Fourth Amendment.**

Defendants have previously intimated that Bell's detention was not a violation of the Fourth Amendment because on June 10 – two days after his arrest – he had a detention hearing before a Family Court Commissioner that was tantamount to a probable cause hearing and the commissioner's order amounted to a finding of probable cause. But there is a factual dispute as to what did and did not occur in Family Court. The evidence will be that neither Munyan nor Neukirch testified nor were they even present at that hearing. And Plaintiff anticipates that there will be testimony that the police reports were likely not available to the commissioner during that hearing; that the juvenile officer and/or the attorney for the juvenile officer, *i.e.*, the prosecutor, would have merely summarized for the commissioner what was known at the time; that almost no one is kept in detention unless

there was a firearm offense charged (or a sex crime or crime of violence – not relevant here); and, that all the juvenile officer or the attorney for the juvenile officer had to tell the commissioner for the result to be an order of detention was that a firearm was involved. That is hardly a probable cause hearing. And the second hearing was simply an arraignment at which the only persons appearing were Bell, his mother, his appointed counsel, a deputy juvenile officer, and the attorney for the juvenile officer, so there was no more evidence of probable cause at that hearing than at the first hearing. Given that the arrest of Bell was based on a rushed, eyewitness *mis*identification and was therefore without *reliable* probable cause, the flawed process by which he was ordered detained and remained in detention for 21 days was also without probable cause and was a violation of the Fourth Amendment.

As observed in *Manuel v. City of Joliet*, 580 U.S. ___, 137 S.Ct. 911 (2017), it is settled law that the Fourth Amendment protects the right of the people to be free from unreasonable seizures. *Id*. at 917. A person is seized whenever officials restrain his freedom of movement such that he is not free to leave. *Id*. (citing *Brendlin v. California*, 551 U.S. 249, 254 (2007)). And the Fourth Amendment establishes the standards and procedures governing pretrial detention, and its protection applies even after the start of legal process in a criminal case – even after a judge's determination of probable cause. *Id*. (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (plurality opinion); *id*., at 290 (Souter, J. concurring in judgment)). In *Gerstein*, the Supreme Court upheld the claim of two people arrested without a warrant and held in custody for "a substantial period solely on the decision of a prosecutor." *Gerstein*, 420 U.S. at 106. The Court agreed with those plaintiffs that a pretrial restraint on liberty is unlawful unless a judge

2

Case 4:17-cv-00695-DGK   Document 141   Filed 09/27/21   Page 2 of 10

or grand jury makes a *reliable* finding of probable cause. *Id*. at 1114, 117, n. 19. The Fourth Amendment guarantees a "fair and reliable determination of probable cause as a condition for any significant pretrial restraint. *Id*. at 125. Those detained prior to trial without such a finding could appeal to the Fourth Amendment's protection against unfounded invasions of liberty. *Id*. at 112.

As *Manuel* makes clear:

> . . . pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. [Citation omitted.] That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong – when, for example, a judge's probable cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim . . . .
>
> For that reason, . . . Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention. . . . Police officers initially arrested Manuel without probable cause, based solely on his possession of pills that had field tested negative for an illegal substance. So . . . Manuel could bring a claim for wrongful arrest under the Fourth Amendment. And the same is true . . . as to a claim for wrongful detention – because Manuel's subsequent weeks in custody were *also* unsupported by probable cause, and so *also* constitutionally unreasonable. . . . All that the judge had before him were police fabrications about the pills' content. The judge's order holding Manuel for trial therefore lacked any proper basis. And that means Manuel's ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights. Or put just a bit differently: Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention – probable cause to believe he committed a crime.

*Manuel*, 137 S.Ct. at 918-20.

So too here, there was no probable cause for Bell's arrest. All that the commissioner

3

had before him was the assertion that Bell had been arrested on a firearms charge. Therefore, his detention on the mere request of the juvenile officer or the attorney for the juvenile officer was also unsupported by probable cause and also constitutionally unreasonable.

**2. A "prudent" officer acting reasonably is an element of probable cause.**

As Plaintiff emphasized in objecting to Defendants' proposed verdict directors and proffering his own verdict director and a separate instruction defining probable cause (Docs. 132 - 132-2), Eighth Circuit Model Civil Jury Instruction 4.51 does not adequately define probable cause. The Court should instruct the jury using the simple verdict directors proffered by Plaintiff, requiring that the jury find that Neukirch and Munyan "did not have probable cause to arrest Plaintiff"[1], and the separate instruction defining probable cause that incorporates the term "prudent" as used repeatedly in the Eighth Circuit's opinion in this case as well as in Supreme Court opinions. *See*, *e.g.*, *Bell v. Neukirch*, 979 F.3d 594, 605 (8th Cir. 2020) ("the totality of circumstances was insufficient to warrant a prudent officer in believing that Bell was the suspect"); *see also Gerstein*, 420 U.S. at 111-112 (the standard calls for "facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense"); *Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause . . . requires only the kind of fair probability on which reasonable and prudent people . . . act").

---

[1] The parties have stipulated that Defendants Neukirch and Munyan arrested Bell. Therefore, the only element the jury needs to find is that there was no probable cause to arrest Bell.

4

### 3. Additional aspects of what constitutes probable cause warrant instruction.

As also previously asserted in Plaintiff's jury instruction submission (Doc. 132 - 132-2), the jury should be instructed that probable cause may justify an officer arresting an otherwise innocent person only "when that person *reasonably* fits the description of the suspect." *Bell*, 979 F.3d at 603 (citing *Hill v. California*, 401 U.S. 797, 804 (1971)) (emphasis in *Bell*). It is also important that the jury understand that the totality of the circumstances determines the existence of probable cause and so officers are not free to disregard plainly exculpatory evidence even if substantial inculpatory evidence, standing alone, suggests that probable cause exists. *Bell*, 979 F.3d at 603 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). The weight of all of the evidence, not just the sufficiency of the incriminating evidence, goes into a determination of whether there was probable cause to arrest. *Id*.

And it is crucial that jurors understand that, as the Eighth Circuit held in this case – indeed, as Plaintiff has argued, it is the law of the case – officers have a duty to conduct a reasonably thorough investigation prior to an arrest in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if officers wait to obtain more facts before making the arrest. *Bell*, 979 F.3d at 604 (quoting *Kuehl*, 173 F.3d at 650). Both of those conditions were the case here – the gun had been recovered and the officers had the names and contact information of the two apprehended juveniles and their parents/guardians, as well as Bell's. All they were lacking was the true suspect. Had officers taken more time to investigate, they might have actually identified and arrested the teen who had the gun and ran from them while avoiding wrongfully arresting Bell.

### 4. Behavior and state of mind are revelatory.

**a.** The state of mind of Munyan and Viesselman at the moment of Bell's arrest (as evidenced by a nod of Viesselman's head and a very brief verbal acknowledgment to Bell, who then asks, "It's me?") are relevant to establish the precise time of that arrest, laying a marker as to the circumstances of the eyewitness identification by Munyan and the acknowledgment of the same by Viesselman. It is evidence as to where Munyan was at the moment, what he had seen or not seen, and is important for the understanding of the jury as to circumstances of that arrest and whether or not there was probable cause. The very brief verbal acknowledgment by Viesselman to Bell ("That's what he said.") that indeed Bell had at that moment been identified and was under arrest is not hearsay. It is clearly not offered for the truth of the matter – that Bell was the suspect runner – and it marks the state of mind (and, importantly, the moment in time) of both Munyan and Viesselman as to when they understood Bell was arrested.

**b.** Viesselman, while waiting for Munyan to come to where Viesselman had detained Bell, spoke to Bell (not heard by Munyan): "You don't seem like you're really out of breath after a foot chase or anything so I don't imagine it's you, but you match what he's wearing so that's why I gotta stop you until we check, OK?", and "It sounds like they're on their way here, so we should be done here pretty quick." The observation and comment by Viesselman about Bell not being out of breath had already been radioed by Viesselman to Munyan, describing Bell's breathing as "normal." These comments are offered to establish the state of mind of Viesselman, a police officer with presumably the same understanding of probable cause as Munyan. Viesselman, based on what he had observed and radioed to Munyan

6

(black and white shorts, not blue; not out of breath as after a foot case; 6'3" tall, not 5'10"; shoes on, not off) and his state of mind as to a lack of probable cause ("don't imagine it's you" and "be done here pretty quick") are helpful evidence for the jury to determine if further investigation was necessary before a probable cause determination could be made. These comments by Viesselman are some evidence as to what is reasonable under the circumstances. After all, he was the officer who stopped Bell on reasonable suspicion. He was the one who could detain Bell for a necessary investigation to determine if reasonable suspicion could be converted to probable cause, and he had concluded that, without more evidence, there was no probable cause, at least not at that time. His comments should be admitted to help the jury understand what was or was not reasonable.

**5. The evidence will support submitting punitive damages.**

There are two reasons why the evidence will support submitting the issue of punitive damages to the jury. First, if the jury finds lack of probable cause because the defendants acted unreasonably, unreasonable acts in themselves are sufficient to support punitive damages. Second, the evidence will establish that in arresting Bell the defendants acted in reckless disregard to his constitutional right to be free from an unreasonable seizure.

**6. The Court should permit leading questions of Officer Viesselman by Plaintiff's counsel.**

Under Fed. R. Evid. 611(c), leading questions should not be used on direct examination except as necessary to develop a witness' testimony. However, the rule further provides that a court should allow leading questions on cross-examination, and when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. "The use of leading questions is a matter left to the discretion of the district court." *United States*

*v. Good low*, 105 F.3d 1203, 1207-08 (8th Cir. 1997) (quoting *United States v. Butler*, 56 G.3d 941, 943 (8th Cir.), *cert. denied*, 516 U.S. 924 (1995)); *see also*, Fed. R. Evid. 611 (c) Advisory committee's note (whether to allow leading questions "clearly falls within the area of control by the judge over the mode and order of interrogation and presentation").

In *Ellis v. City of Chicago*, 667 F.2d 606 (7th Cir. 1981), an action to recover against the city and a police officer after the officer killed their dog, the plaintiffs argued that the district court should have permitted leading questions of two other officers who were also employed by the City of Chicago. The Seventh Circuit observed that they were so employed at all times during the litigation, had worked with the defendant officer during that employment, and that they had each been present during portions of the incident giving rise to the lawsuit. The court concluded that they "thus clearly qualified as 'witness(es) identified with an adverse party' for purposes of Rule 611(c)." *Id*. at 613.

Here, Plaintiff's counsel should be allowed to ask leading questions of Officer Viesselman since he is a witness identified with the defendants. Like in *Ellis*, Viesselman testified in his deposition that he talks with Munyan and Neukirch "all the time"; he participated in the arrest; and he complemented Munyan with a "Good job, you!" and a pat on the shoulder. When Rule 611(c) was proposed in 1972, and as enacted in 1974, the drafters determined that prior limitations on who was hostile represented "an unduly narrow concept of those who may safely be regarded as hostile without further demonstration." Fed. R. Evid. 611 (c) Advisory committee's note. "The new rule was thus designed to enlarge the categories of witnesses automatically regarded as adverse and therefore subject to interrogation by leading questions without further showing of actual hostility." *Ellis*, 667

F.2d at 613. Viesselman checks all of the boxes that led the Seventh Circuit to conclude the two officers in *Ellis* clearly qualified as witnesses identified with an adverse party and so this Court should permit Plaintiff's counsel to employ leading questions during his testimony.

**7. A twelve-person jury unduly increases Plaintiff's burden.**

Plaintiff contends that twelve jurors is excessive and improperly increases the burden of proof on Plaintiff. While twelve jurors compared to eight in a criminal trial also increases the burden on the prosecution, that increased burden is consistent with the obligation of the government to prove the guilt of the defendant beyond a reasonable doubt and serves both constitutional and criminal justice ends, enhancing the reliability of a guilty verdict. There is, however, no comparable justification for increasing the burden of proof on a plaintiff in a civil case. Plaintiff respectfully requests that the Court seat a jury of eight jurors in this case.

Respectfully submitted,

LAW OFFICE OF ARTHUR BENSON II


By s/ Jamie Kathryn Lansford
Arthur A. Benson II #21107
Jamie Kathryn Lansford #31133
4006 Central Avenue
Kansas City, Missouri 64111
(816) 531-6565
abenson@bensonlaw.com
jlansford@bensonlaw.com

Attorneys for Plaintiff Tyree Bell


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was filed on the Court's

electronic filing system which served a copy on counsel identified below this  27th  day of September, 2021:

Diane Peters   #54784
Nicolas Taulbee  # 61065
Assistant Attorneys General
Office of Missouri Attorney General
Eric S. Schmitt
615 East 13th Street, Suite 401
Kansas City, Missouri  64106
(816) 838-2285
(816) 889-5006 (telefacsimile)
Diane.Peters@ago.mo.gov
Nicolas.Taulbee@ago.mo.gov

and

Peter A. Houser  #71278
Assistant Attorney General
Office of Missouri Attorney General
Eric S. Schmitt
P.O. Box 899
8th Floor, Broadway Office Building
221 West High Street
Jefferson City, Missouri  65101
(573) 751-87772
(573) 751-9456
Peter.Houser@ago.mo.gov

Attorneys for Defendants

                            s/ Jamie Kathryn Lansford
                            Attorney for Plaintiff Tyree Bell